IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re: | ) | CIVIL NO. 14-00352 SOM/RLP |
| | ) | |
| DOUGLAS BRUCE HIMMELFARB, | ) | (Bankr. Case No. 13-00229) |
| | ) | |
| Debtor, | ) | |
| _____ | ) | ORDER AFFIRMING IN PART, VACATING IN PART, AND REMANDING IN PART BANKRUPTCY COURT ORDERS |

**ORDER AFFIRMING IN PART, VACATING IN PART,
AND REMANDING IN PART BANKRUPTCY COURT ORDERS**

**I.      INTRODUCTION.**

In contravention of a Stipulated Protective Order and an Amended Discovery Order, Debtor Douglas Bruce Himmelfarb turned over certain discovery to the press and others.  The bankruptcy court held him in contempt, sanctioned him over $68,000, and fined him $9,000.  Himmelfarb now appeals.  This court affirms the bankruptcy court's determination that Himmerlfarb was in contempt of court but remands for further consideration the sanction and fine amounts in light of the discussion contained in the present order.  The court also remands to the bankruptcy court the matters raised in Himmelfarb's countermotion to hold Marion Kahan in contempt for overdesignating material as confidential.

**II.      BACKGROUND.**

On February 14, 2013, Douglas Bruce Himmelfarb filed for bankruptcy under Chapter 11.  See U.S. Bankr. Ct. No. 13-00229, Docket # 1.  Himmelfarb owns a painting that may be an

authentic Mark Rothko painting worth millions of dollars. <u>See</u> U.S. Bankr. Ct. No. 13-00229, Docket # 15, Page 10 of 32 (indicating that Himmelfarb owns 75% of a "Mark Rothko Ex. No. 7" that he values at $30,000,000).

In an attempt to establish the authenticity of his purported Rothko painting, Himmelfarb sought discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure from Marion Kahan, the manager of certain documents and artworks held by Rothko's children, including Christopher Rothko, and Mark Rothko's estate. Out of a desire to avoid getting dragged into litigation over the authenticity of the Rothko painting, Kahan negotiated a Stipulated Protective Order with Himmelfarb, signed by Bankruptcy Judge Robert J. Faris. The Stipulated Protective Order was filed on August 7, 2013. <u>See</u> U.S. Bankr. Ct. No. 13-00229, Docket # 97.

The Stipulated Protective Order gave each party to it the right to designate as "confidential" any document or discovery response that the party viewed in good faith as containing "information involving trade secrets, or confidential business or financial information." <u>See</u> <u>id.</u> ¶ 1. Any party to the Stipulated Protective Order could also designate information disclosed during a deposition as "confidential." <u>See</u> <u>id.</u> ¶ 2. All discovery was to "be used by the party or parties to whom the information is produced solely for the purpose of this case."

See id. ¶ 3. "Confidential" information could only be disclosed to a limited group of people, including counsel and counsel's employees in the bankruptcy case, consultants and experts, the court, and certain witnesses. See id. ¶ 4.

Any party contending that material designated as "confidential" was not actually "confidential" could give written notice of that contention to the other party, who would then have twenty-five days to apply to the bankruptcy court for an order designating the material as "confidential." See id. ¶ 8. Even if challenging a "confidential" designation, a party was required to treat the material in issue as "confidential" until the designation was withdrawn, an opponent failed to timely apply to the court for a ruling that the material was "confidential," or the court ruled that the material was not "confidential." See id. ¶ 9.

On September 11, 2013, Kahan produced to Himmelfarb copies of a photograph of his painting as well as a black and white negative of the photograph, asking that the material be kept "confidential" pursuant to the Stipulated Protective Order. See Excerpts of Record 275-78.

On October 16, 2013, Himmelfarb's attorney sent an e-mail to Kahan's attorney noting that the pictures and negative were marked "as Confidential pursuant to the protective order," but that Himmelfarb's attorney did not see "how these documents

fall within the definition of 'confidential' under the protective order and request that you remove that designation." See ECF No. 24-1, PageID # 869.

Kahan's attorney responded the following day, October 17, 2013, stating that Himmelfarb had ignored a previous request that he explain why he wanted the "confidential" designation removed. Kahan's attorney's e-mail noted that she was a third party with no interest in giving Himmelfarb material "for purposes beyond the present litigation." ECF No. 24-1, PageID # 868.

Himmelfarb's attorney responded the same day:

> The present litigation is a Chapter 11 bankruptcy. Your clients were served with subpeonas in a bankruptcy case under Fed. R. Bankr. Pro. Rule 2004. The scope of a Rule 2004 Subpoena relates "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or the debtor's right to a discharge." The pictures and negative are of a painting that is the property of the debtor. The debtor's plan is to sell the painting. We intend to use the pictures and/or the negative and the fact that it was produced by Ms. Kahan as part of the information that will be provided to prospective purchasers.

ECF No. 24-1, PageID # 868.

In a letter dated October 29, 2013, Himmelfarb's attorney complained to Bankruptcy Judge Faris about the "confidential" designation on the photographs and negative. See

4

ECF No. 24-1, PageID # 871.  In that letter, Himmelfarb included background information, noting that Kahan had produced 21 pages of documents, all of which she had designated "confidential." Id.  The letter then explained that Himmelfarb needed to use the photographs and negative to market his picture and discussed the e-mail correspondence concerning Himmelfarb's request to remove the "confidential" designation from the photographs and negative. The letter did not actually ask that the "confidential" designation be removed from documents other than the photographs and negative.  Id.

According to his letter of October 29, 2013, Himmelfarb had proposed the previous day that Kahan remove the "confidential" designation from the pictures and the negative if they were accompanied by a disclaimer stating that Kahan was not in the business of authenticating paintings and that the production of the pictures and negative was not a warranty of any kind as to the authenticity of Himmelfarb's painting.  Id.  The letter requested a telephonic discovery conference regarding the "confidential" designation on the pictures and negative, but not with respect to any other document (or the depositions that took place the following month).  Id.

At a status conference on November 8, 2013, at which the "confidential" designation was discussed, Bankruptcy Judge

Faris directed Himmelfarb and Kahan to work on a "disclaimer."
See U.S. Bankr. Ct. No. 13-00229, Docket # 160.

There is no dispute that, on November 22, 2013,
Himmelfarb took the deposition of Kahan, whose counsel indicated
at the beginning of the deposition that everything in it was
"confidential" and subject to the Stipulated Protective Order.
Bankruptcy Judge Faris noted that Kahan so designated virtually
all of the discovery because she did not want to be drawn into
litigation concerning whether Himmelfarb's painting was, in fact,
a Rothko, or to create any perception that she supported or
opposed any authenticity claim. See Memorandum of Decision on
Motion for Order of Contempt and Sanctions, U.S. Bankr. Ct. No.
13-00229, Docket # 272, Page 2 of 10.

Himmelfarb implies that, on December 11, 2013, in
accordance with the Stipulated Protective Order, he challenged
Kahan's "confidential" designation regarding the depositions.
See ECF No. 5, PageID # 94. The alleged challenge he refers to
is a letter that he sent to Bankruptcy Judge Faris on that date:

> Dear Judge Faris:
>
> Thank you for your assistance in this
> matter. Mr. Himmelfarb recognizes the
> Court's concern that the Disclaimer language
> should protect Mr. Rothko and Ms. Kahan and
> should not contain Mr. Himmelfarb's position
> on the facts. However, Mr. Rothko and
> Ms. Kahan have designated every document
> produced pursuant to Rule 2004 Examinations
> and the entire transcripts of their oral Rule
> 2004 Examinations as "Confidential" under the

> Stipulated Protective Order. The
> Confidential designation (without any showing
> of good cause) is contrary to the "general
> rule, [that] the public is permitted 'access
> to litigation documents and information
> produced during discovery.'" <u>Father M. v.
> Various Tort Claimants (In re Roman Catholic
> Archbishop)</u>, 661 F.3d 417, 424 (9th Cir.
> 2011) (citation omitted). The result is that
> Mr. Rothko and Ms. Kahan get to state their
> position (which Mr. Himmelfarb disagrees
> with), but there is a gag that prevents Mr.
> Himmelfarb from stating his position based on
> the evidence he has gathered. Provided that
> Mr. Himmelfarb may use all of the documents
> produced and the Rule 2004 Examination
> transcripts, Mr. Himmelfarb is agreeable to
> the Court's proposed language with the
> following proposed revisions . . . .

U.S. Bankr. Ct. No. 13-00229, Docket # 168, Excerpts of Record

395-96. The letter discusses proposed changes to the disclaimer

that was to be attached to any production of prints from the

negative and asked for a further telephonic discovery conference.

<u>Id.</u>

On December 13, 2013, Bankruptcy Judge Faris filed a

Discovery Order. U.S. Bankr. Ct. No. 13-00229, Docket # 172.

This order was amended on January 9, 2014, in connection with an

order granting reconsideration of the Discovery Order. <u>See</u> U.S.

Bankr. Ct. No. 13-00229, Docket #s 180 and 181. Bankruptcy Judge

Faris acknowledged Himmelfarb's challenge to Kahan's decision to

label virtually every document and all testimony as

"confidential." Because Himmelfarb sought discovery from Kahan

to maximize the value of his painting, Bankruptcy Judge Faris

indicated that Himmelfarb's purpose in seeking the discovery was commercial in nature. To balance Himmelfarb's need for information against the interests of Kahan and the Rothko family, nonparties with no wish to be drawn into litigation about the authenticity of the painting, Bankruptcy Judge Faris allowed Himmelfarb to give others prints from the negative produced by Kahan provided the prints were accompanied by a lengthy disclaimer negotiated by the parties. He ruled, "All other documents and testimony provided by Ms. Kahan or the Rothkos shall remain confidential." <u>See</u> Docket # 181.

Ignoring the terms of the Stipulated Protective Order and the Amended Discovery Order, Himmelfarb disclosed "all of the materials designated as 'confidential'" to Jennifer Maloney and Ken Benzinger, reporters for the Wall Street Journal and BuzzFeed. <u>See</u> Declaration of Douglas Bruce Himmelfarb ¶¶ 2-3, U.S. Bankr. Ct. No. 13-00229, Docket # 266. Himmelfarb also disclosed information designated "confidential" 1) to Don Leeds, Peter Hastings Falk, and Stephen Little, who worked for his private fine art broker, Professional Art Transaction Alliance; 2) to Asher Edelman, Gary Brustein, David Brustein, and Alex Wheat, who worked for his second fine art broker, Art Assure, Ltd.; 3) to eight individuals he interviewed to be his broker; 4) to an art appraiser, 5) to an auctioneer, and 6) to an art photographer. <u>Id.</u>

In an e-mail of April 2, 2014, one of the Wall Street
Journal reporters, Maloney, informed Kahan that she had read
Kahan's deposition and wanted to talk to Kahan about the
photograph and other correspondence.  See U.S. Bankr. Ct. No. 13-
00229, Docket # 203-2, Pages 13 and 14 of 16.  Then, in an
article published in the Wall Street Journal on April 25, 2014,
Maloney discussed the authenticity of Himmelfarb's painting based
on "compelling photographic evidence linking the painting to
Rothko."  See U.S. Bankr. Ct. No. 13-00229, Docket # 220-9, Page
2 of 4.

On April 17, 2014, counsel for Kahan filed a motion
seeking to hold Himmelfarb and his counsel in contempt.  See U.S.
Bankr. Ct. No. 13-00229, Docket # 203.  Himmelfarb filed his
opposition to the motion on May 5, 2014.  See U.S. Bankr. Ct. No.
13-00229, Docket # 220.  In connection with that opposition,
Bankruptcy Judge Faris allowed certain documents to be filed
under seal.  See U.S. Bankr. Ct. No. 13-00229, Docket # 221.
Himmelfarb also filed a Countermotion for Order of Contempt
and/or Sanctions.  See U.S. Bankr. Ct. No. 13-00229,
Docket # 219.  Himmelfarb argued that Kahan should be held in
contempt and/or sanctioned for having overdesignated material as
"confidential."  See U.S. Bankr. Ct. No. 13-00229, Docket # 220,
Page 21 of 27.  Himmelfarb contended that the documents and
deposition transcripts so designated did not contain information

involving trade secrets, or confidential business or financial information, as required by paragraph 1 of the Stipulated Protective Order.  Id. page 22 of 27.

On July 7, 2014, Bankruptcy Judge Faris held Himmelfarb (but not his counsel) in contempt for having "flagrantly violated the Stipulated Protective Order and the Amended Discovery Order." See Memorandum of Decision on Motion for Order of Contempt and Sanctions, U.S. Bankr. Ct. No. 13-00229, Docket # 272, Page 4 of 10.  In an order filed on July 22, 2014, Bankruptcy Judge Faris awarded Kahan $68,063.18 in legal fees and fined Himmelfarb $9,000.  Id. at 9 of 10; see also Docket # 280 (Order filed July 22, 2014).

On August 5, 2014, Himmelfarb appealed 1) the Discovery Order of December 13, 2013, Docket # 172; 2) the January 9, 2014, order granting reconsideration of the Discovery Order, Docket # 180; 3) the Amended Discovery Order of January 9, 2014, Docket # 181; 4) the July 7, 2014, Memorandum of Decision on Motion for Order of Contempt and Sanctions, Docket # 272; and 5) the Order of July 22, 2014, Docket # 280.  See Notice of Appeal, U.S. Bankr. Ct. No. 13-00229, Docket # 284.  What Himmelfarb styles as an appeal of these orders is in essence a challenge to the finding of contempt and the sanctions and fine that flowed from that finding.  He also challenges the bankruptcy court's refusal

10

to hold Kahan in contempt based on what he says was Kahan's overzealous designation of material as "confidential."

III.     **STANDARD OF REVIEW.**

The parties agree that, on appeal, a bankruptcy court's decision to hold someone in civil contempt and to impose sanctions is reviewed for abuse of discretion.  <u>See</u> <u>Kismet Acquisition, LLC v. Diaz-Barba (In re Icenhower)</u>, 755 F.3d 1130, 1138 (9th Cir. 2014) ("We review for abuse of discretion the bankruptcy court's finding of civil contempt and imposition of sanctions.").  However, findings of fact made in connection with a civil contempt order by a bankruptcy judge are reviewed for clear error.  <u>Id.</u>

IV.     **ANALYSIS.**

A.     **The Bankruptcy Court Did Not Abuse Its Discretion in Holding Himmelfarb in Contempt.**

The Ninth Circuit has noted that a bankruptcy court has civil contempt power.  <u>See</u> <u>In re Hercules Enters., Inc.</u>, 387 F.3d 1024, 1027 (9th Cir. 2004); <u>In re Rainbow Magazine, Inc.</u>, 77 F.3d 278, 284-85 (9th Cir. 1996).  "'The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.'"  <u>Knupfer v. Lindblade (In re Dyer)</u>, 32 F.3d 1178, 1191 (9th Cir. 2003) (quoting <u>Renwick v. Bennett (In re Bennett)</u>, 298 F.3d 1059, 1069 (9th Cir.2002)).

> Civil contempt in this context consists of a
> party's disobedience to a specific and
> definite court order by failure to take all
> reasonable steps within the party's power to
> comply. The contempt need not be willful,
> and there is no good faith exception to the
> requirement of obedience to a court order.
> But a person should not be held in contempt
> if his action appears to be based on a good
> faith and reasonable interpretation of the
> court's order. Substantial compliance with
> the court order is a defense to civil
> contempt, and is not vitiated by a few
> technical violations where every reasonable
> effort has been made to comply.

In re Dual-Deck Video Cassete Recorder Antitrust Litig., 10 F.3d
693, 695 (9th Cir. 1993) (quotation marks, alterations, and
citations omitted).

Civil contempt sanctions may be imposed to coerce a
party into compliance with a court order. LifeScan Scotland,
Ltd. v. Shasta Techs., LLC, 2013 WL 4604746 (N.D. Cal. Aug. 28,
2013). Another purpose of a civil contempt sanction is to
"compensate the contemnor's adversary for the injuries which
result from the noncompliance." In re Crystal Palace Gambling
Hall, Inc., 817 F.2d 1361, 1366 (9th Cir. 1987). In this
context, "an award to an opposing party is limited by that
party's actual loss." Id.

Bankruptcy Judge Faris did not abuse his discretion in
holding Himmelfarb in contempt of the Stipulated Protective Order
and the Discovery Order. Both orders clearly prohibited
Himmelfarb from giving Kahan's entire deposition to the press.

12

Himmelfarb knowingly, willfully, and unjustifiably violated the
orders in bad faith by giving the deposition to the press in a
clear attempt to market his painting as an authentic Rothko.
Although the Amended Discovery Order would have allowed
Himmelfarb to provide the press with prints from the negative so
long as the negotiated disclaimer was simultaneously provided,
Himmelfarb did not limit what he gave the press.  He simply
proceeded as if the Stipulated Protected Order and Amended
Discovery Order did not exist.  Moreover, if the photographs or
negative were attached as exhibits to the deposition given to the
reporter, then Himmelfarb's failure to simultaneously provide the
reporter with the required disclaimer was a clear violation of
the Amended Discovery Order.

Court rules such as Federal Rule of Civil Procedure
60(b), made applicable to bankruptcy cases by Federal Rule of
Bankruptcy Procedure 9024, provide a vehicle through which a
party may seek relief from an order that he or she believes is in
error.  Himmelfarb did not take advantage of those rules.

Himmelfarb correctly notes that, while a bankruptcy
court's discovery order is not immediately appealable, a contempt
ruling is.  See Speer v. Tow (In re Royce Homes LP), 466 B.R. 81,
89 (S.D. Tex. 2012); see also United States v. Krane, 625 F.3d
568, 572-73 (9th Cir. 2010) (noting that litigants confronted
with a particularly injurious or novel ruling as to an attorney-

client privilege might seek immediate review of the order by not complying with it, being held in contempt, and appealing the contempt ruling).  A litigant has a defense to a contempt allegation if the underlying order is unconstitutional because compliance would require the litigant to give up a constitutional right, such as one under the First, Fourth, or Fifth Amendment.  See United States v. Dickinson, 465 F.2d 496, 512 (5th Cir. 1972).  Impossibility or inability to comply with an order is also a valid defense to a civil contempt charge.  See IvyMedia Corp. v. Take Tour, Inc., 2013 WL 5290590 (D. Mass. Aug. 9, 2013).

Himmelfarb does not show that any of the bankruptcy court's rulings was unconstitutional, or that he could not comply with any order.

Himmelfarb does contend that he had a First Amendment Right to disseminate any discovery he received without regard to his agreement and the order to treat that information as "confidential."  This is a disconcerting argument given Himmelfarb's stipulation to limitations on dissemination. Nothing in the First Amendment prohibits private parties from voluntarily agreeing to curtail their own freedom of expression. Bankruptcy Judge Faris entered the Amended Discovery Order against the backdrop of that voluntary agreement.  Himmelfarb never challenged the order's applicability to Kahan's deposition.

He simply disclosed the deposition to the press.  There is
nothing indicating that he felt restrained by the orders in any
way.  He instead chose to ignore the orders.  He was held in
contempt not for simple disclosure of information, but for
violating court orders.  No First Amendment right was implicated
by the orders themselves, which grew from Himmelfarb's own
agreement.

Apart from his disconcerting First Amendment
contention, Himmelfarb is not actually challenging the validity
of the orders.  The record establishes that he chose to ignore
the orders, generally claiming that they did not apply to his
disclosure of the deposition transcript to the press.  A
challenge going to the applicability of the orders is not a
challenge to their validity.  Because Himmelfarb is wrong
concerning the applicability of the orders, he must live with the
consequences of his decision to ignore them.

Himmelfarb is unconvincing in arguing that the
deposition lost any "confidential" character.  Himmelfarb says he
challenged that designation via his letter of December 11, 2013,
to Bankruptcy Judge Faris.  He argues that the letter constituted
"written notice" pursuant to paragraph 8 of the Stipulated
Protective Order that Kahan had twenty-five days "to apply to the
Court for an order designating the material as confidential."
Because Kahan did not so apply, Himmelfarb contends, the

deposition lost any "confidential" character under paragraph 9 of the Stipulated Protective Order.  The court disagrees.

First, the letter of December 11, 2013, was addressed to Bankruptcy Judge Faris and simply copied to Kahan.  The focus of the December 11, 2013, was not a challenge to the "confidential" designation of the deposition.  The letter was instead part of the ongoing "briefing" for the discovery conference regarding Himmelfarb's ability to use the photographs and negative produced by Kahan to market his painting as authentic so long as a disclaimer was simultaneously provided. Although the letter of December 11, 2013, complained about overdesignation, the context of the discussion concerned the circumstances under which Himmelfarb could use the photographs and negative.  Himmelfarb's quip about Kahan's designation of virtually everything as "confidential" was a background statement more than a "challenge" to that designation for purposes of the Stipulated Protective Order.

Second, even if the letter of December 11, 2013, addressed to Bankruptcy Judge Faris could be considered "written notice" to Kahan of a "challenge" to the "confidential" designation, Himmelfarb put the issue before Bankruptcy Judge Faris such that it was unnecessary for Kahan to do so.  When Bankruptcy Judge Faris issued his Discovery Order and Amended Discovery Order, he acknowledged the overdesignation complaint,

but limited what Himmelfarb could disclose to prints from the negative, provided a disclaimer was included.  Bankruptcy Judge Faris affirmatively ruled, "All other documents and testimony provided by Ms. Kahan or the Rothkos shall remain confidential." Amended Discovery Order at 3-5.  Himmelfarb points to nothing in the record indicating that he subsequently asked Bankruptcy Judge Faris to reconsider whether Kahan's deposition was still subject to the "confidential" designation.  He also submits no evidence that he actually believed that designation to have expired because of his so-called "challenge."  He knew or should have known that, when he gave Kahan's deposition transcript to the reporters, he was violating the Amended Discovery Order's language that Kahan's deposition testimony was "confidential" and therefore could not be disclosed under the terms of the Stipulated Protective Order.

The Stipulated Protective Order prohibited Himmelfarb from disclosing any part of Kahan's deposition so long as it had the "confidential" designation.  The Amended Discovery Order allowed Himmelfarb to disclose only prints from the negative, and even then only if the disclaimer was simultaneously provided. Ignoring those limitations, Himmelfarb gave Kahan's entire deposition to the press.  Before providing the deposition to the press, Himmelfarb could have challenged the "confidential" designation in court, but he failed to clearly do so.

17

Although the court agrees with Himmelfarb that Kahan's deposition transcript cannot be considered "confidential" in its entirety, this court need not determine which parts of it are actually "confidential" under the terms of the Stipulated Protective Order. All that matters for purposes of this appeal and the underlying contempt motion and order is that a deposition carrying a "confidential" designation was given to the press in violation of court orders. For that reason, the court denies the motion to seal, ECF No. 17, and orders that the exhibits that are the subject of the motion to seal not be filed at all.

Himmelfarb admits to having made disclosures of "confidential" information to 1) to Don Leeds, Peter Hastings Falk, and Stephen Little, who worked for his private fine art broker, Professional Art Transaction Alliance; 2) to Asher Edelman, Gary Brustein, David Brustein, and Alex Wheat, who worked for his second fine art broker, Art Assure, Ltd.; 3) to eight individuals he interviewed to be his broker; 4) to an art appraiser, 5) to an auctioneer, and 6) to an art photographer. See Declaration of Douglas Bruce Himmelfarb ¶¶ 2-3, U.S. Bankr. Ct. No. 13-00229, Docket # 266. Bankruptcy Judge Faris determined that none of these individuals fell within the group of people permitted by the Stipulated Protective Order to receive that information. See ECF No. 1-1, PageID # 25.

This court notes that paragraph 4(d) of the Stipulated Protective Order allowed Himmelfarb to disclose "confidential" information to "consultants or expert witnesses retained for the prosecution or defense of this litigation, including Debtor's fine art broker, Private Art Transactions Alliance, LLC provided that each such person shall execute" an agreement to be bound by the terms of the Stipulated Protective Order. Himmelfarb does not demonstrate that every person he disclosed the information to executed such an agreement. Nor does he demonstrate that every person to whom he made disclosures was a consultant or expert witness "retained for the prosecution or defense of this litigation." Perhaps some of the individuals fell under the "fine art broker" category. Nevertheless, under these circumstances, to the extent the finding of contempt was based on a determination that disclosures were made to people that were not authorized by the Stipulated Protective Agreement to receive the material, Himmelfarb shows no clear error in the finding.

Himmelfarb complains that Kahan designated nearly everything she produced in discovery as "confidential," and that such a designation was not made in "good faith." Bankruptcy Judge Faris was not persuaded that Kahan had proceeded in "bad faith," given the concerns discussed in the Amended Discovery Order. See U.S. Bankr. Ct. No. 13-00229, Docket # 272, Page 7 of 10. Even if Kahan's designations were overbroad, that would not

excuse Himmelfarb's knowing and willful violation of court orders. Thus, Himmelfarb fails to show that the finding of contempt should be vacated.

**B.** **Although the Bankruptcy Court Did Not Abuse Its Discretion In Awarding Fees to Kahan, the Amount of Fees Awarded Includes Items Not Properly Awardable.**

Having held Himmelfarb in contempt of court orders, Bankruptcy Judge Faris awarded legal fees to Kahan. An award of fees was totally within the law. The only issue is whether the scope of those fees was appropriate. The Ninth Circuit has noted that one of the purposes of a civil contempt sanction is to "compensate the contemnor's adversary for the injuries which result from the noncompliance." In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1366 (9th Cir. 1987). Accordingly, "an award to an opposing party is limited by that party's actual loss." Id. The sanction award against Himmelfarb should have been, but was not, limited to fees Kahan incurred as a result of Himmelfarb's violation of court orders.

Bankruptcy Judge Faris awarded $68,063.18 in legal fees for Himmelfarb's contempt, reasoning that all fees Kahan incurred in connection with discovery were appropriate because Himmelfarb always intended to disclose whatever he received from Kahan, without regard to any court order. In other words, Bankruptcy Judge Faris was convinced that Himmelfarb "never intended to comply with the orders restricting the use of the materials."

20

See U.S. Bankr. Ct. No. 13-00229, Docket # 272, Page 8 of 10.

The judge believed that Himmelfarb had spent years trying to substantiate his belief that the painting was an authentic Rothko and never intended to let a court order stand in the way of getting rich. Id. Given that belief, the judge, instead of limiting fees to those flowing from the contempt itself (the disclosure to the reporters in violation of the court orders), allowed for all fees incurred in connection with discovery.

Even if the judge was correct in his assessment of Himmelfarb's intent, the judge was bound by the Ninth Circuit's limitation on contempt sanctions. That is, even if Bankruptcy Judge Faris had the authority to award sanctions punishing Himmelfarb's perceived intent under some other source of authority, sanctions in the context of contempt could only compensate for injuries flowing from the contempt. The award of $68,063, which includes fees incurred before the contempt, was therefore excessive.

This court remands the matter to the bankruptcy court for a redetermination of the appropriate amount of the sanction. To aid the parties on remand, this court states that it has no reason to disagree with Bankruptcy Judge Faris that the hourly amounts charged by Kahan's attorneys are reasonable under the circumstances of this case, as they represent amounts normally charged to Kahan by her mainland attorneys. If the goal of a

contempt sanction is to place a party in the place she would have
been in but for the contemptuous behavior, then what Kahan
actually paid her attorneys should be awarded to her to
compensate her for Himmelfarb's contempt.  Limiting the fees to
the hourly rate charged in this jurisdiction would not adequately
compensate Kahan for the injuries she suffered under the
circumstances presented here.

However, on the present record, the court cannot tell
whether all amounts requested by Kahan pertained to injuries
flowing from the contempt.  For example, on April 16, 2014,
Jonathan P. Bach charged 0.20 hours for a "Teleconference with
client."  See Docket #281, Page 47 of 71.  No declaration or
explanation indicates that this time was necessarily and
reasonably incurred as a result of the contempt.  Possibly, it is
appropriate to refrain from awarding that amount unless such a
declaration is provided.  This court leaves the determination as
to whether new evidence should be allowed concerning the fee
request to the bankruptcy court.

> **C.  The Court Vacates the Bankruptcy Court's Denial of
> Himmelfarb's Countermotion for Contempt and
> Remands that Motion for Further Adjudication.**

The court further remands to the bankruptcy court the
issue of whether Kahan designated materials as "confidential" in
bad faith, as contended in Himmelfarb's countermotion for
sanctions, Docket No. 219.  The countermotion argued that Kahan

had not designated material as "confidential" in good faith, as the Stipulated Protective Order required any such designation to be based on the belief that the material involved "information involving trade secrets, or confidential business or financial information."

In denying the countermotion for contempt, Bankruptcy Judge Faris rejected Himmelfarb's argument that Kahan's "confidential" designations were overbroad "for the reasons stated in the Amended Discovery Order." <u>See</u> Docket # 272, Page 7 of 10. But the Amended Discovery Order simply stated, "All other documents and testimony provided by Ms. Kahan or the Rothkos shall remain confidential." <u>See</u> ECF No. 1-1, PageID # 18. Bankruptcy Judge Faris's ruling may have been based on a belief that Kahan had acted in good faith given her wish not to be drawn into litigation concerning disputes about the authenticity of the painting. <u>See</u> <u>id.</u>, PageID # 15. But that is not necessarily the same as a determination that Kahan designated material as "confidential" because she in good faith thought the material involved "trade secrets, or confidential business or financial information," as required by the Stipulated Protective Order.

In connection with a request to this court that documents be sealed, this court questioned whether the entirety of the documents should be treated as "confidential." <u>See</u> ECF No. 14 ("It is not immediately clear why the documents need to be

sealed in their entirety.  For example, two of the documents are
deposition transcripts.  The court is at a loss to see why
questions about the deponents' names should be sealed, especially
when those names are revealed in the motion to seal.").

On the present record, this court cannot tell whether
Bankruptcy Judge Faris even decided whether the "confidential"
designations were overbroad under the terms of the Stipulated
Protective Order.  This court vacates the order denying the
countermotion and remands the issue, expressing no inclination as
to how the bankruptcy court should rule as to that issue.  The
court simply remands the matter because the failure of the
bankruptcy court to clearly indicate its reasoning prevents this
court from determining whether the bankruptcy court even
addressed the issues raised by the countermotion for sanctions.

This court notes that the determination as to whether
Kahan's "confidential" designations were overbroad may affect
what award is appropriate with respect to Himmelfarb's contempt.

**D.    The Court Also Vacates the Civil Fine of $9,000
and Remands to the Bankruptcy Court the Issue of
the Appropriate Civil Fine.**

Because this court is remanding the issue of whether
Kahan acted in good faith in designating material as
"confidential," this court also remands the issue of whether a
$9,000 fine is appropriate under the circumstances.  This court
notes that, in <u>In re Dyer</u>, 322 F.3d 1178 (9th Cir. 2003), the

Ninth Circuit provided guidance as to a bankruptcy court's ability to fine a person for contempt.  The Ninth Circuit began by noting the difference between a civil and criminal sanction, stating that a civil penalty must be compensatory or designed to coerce compliance.  Id. at 1192.  It noted that an unconditional fine of $50 could be criminal if the contemnor lacks an opportunity to reduce or avoid the fine through compliance.  Id. The Ninth Circuit ruled that criminal (punitive) sanctions may not be imposed under the bankruptcy court's contempt authority. Id. at 1192-93.  Dyer recognized that "relatively mild" noncompensatory fines may be necessary under some circumstances, but also stated that "serious punitive penalties" are not allowed.  Id. at 1193.

Dyer noted that, in F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1140 n.10 (9th Cir. 2001), the Ninth Circuit had discussed "serious" penalties in the context of entitlement to jury trials, recognizing that, in Hanshaw, the Ninth Circuit had implied that any fine above $5,000 (in 1998 dollars) would be considered "serious."  This court agrees with Bankruptcy Judge Faris that a $9,000 fine in today's dollars would be less than the $5,000 fine in 1998 dollars. Therefore, the $9,000 fine does not appear to be a "serious" punitive penalty that the bankruptcy court lacked the power to impose, under the guidance given in Dyer.

Nevertheless, because the fine amount may be affected by the bankruptcy court's determination as to Kahan's good faith designations, this court remands the imposition of the fine to the bankruptcy court. This court is not here indicating what the ultimate amount of any civil fine should be. Bankruptcy Judge Faris should not feel constrained by this remand order from imposing the same fine if he determines it appropriate.

## V.        CONCLUSION.

This court affirms the bankruptcy court's order holding Himmelfarb in civil contempt of the Stipulated Protective Order and the Amended Discovery Order. The court vacates the bankruptcy court order awarding legal fees and a civil fine, as well as the ruling that denied Himmelfarb's countermotion for contempt. The court remands to the bankruptcy court the matters vacated.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 25, 2014.



_/s/ Susan Oki Mollway_
Susan Oki Mollway
Chief United States District Judge

In re: DOUGLAS BRUCE HIMMELFARB, 14-00352 SOM/RLP; (Bankr. Case No. 13-00229); ORDER AFFIRMING IN PART, VACATING IN PART, AND REMANDING IN PART BANKRUPTCY COURT ORDERS

26